FILED

2020 May-08  AM 11:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| STELLA HALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 1:18-cv-01985-SGC |
| | ) | |
| SOCIAL SECURITY | ) | |
| ADMINISTRATION, Commissioner, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>[1]

Plaintiff Stella Hall appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for a period of disability, disability insurance benefits, and supplemental security income.  (Doc. 1).  Plaintiff timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review.  For the reasons stated below, the Commissioner's decision is due to be affirmed.

## I.     FACTS, FRAMEWORK, AND PROCEDURAL HISTORY

Plaintiff was fifty at the time of her disability onset and fifty-one at the time of the unfavorable decision issued by the Administrative Law Judge ("ALJ").  (*See* R. 29, 31).  Plaintiff speaks English and has a high school education.  (R. 29).

---

[1] The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). (Doc. 10).

Prior to her alleged disability onset, Plaintiff worked as an order picker, hand packager, sewing machine operator, and "Assembler, Small Parts." (*Id*.). Plaintiff filed the instant application on October 8, 2015, alleging disability as of April 22, 2015, due to neck and back injuries, depression, chronic migraines, and anxiety attacks. (R. 225-26, 257). Plaintiff subsequently amended her disability onset date to October 1, 2015 (R. 66), and finally to February 25, 2016 (R. 42). Plaintiff testified[2] she could no longer work, primarily due to pain in her neck, shoulders, lower back, and legs. (*See* Doc. 11 at 4-5).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination whether the claimant is performing substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in SGA, he or she is not disabled, and the evaluation stops. *Id*. If the claimant is not engaged in SGA, the Commissioner proceeds to consider the combined effects of all the claimant's physical and mental impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet durational requirements before a claimant will be found disabled. *Id*. The decision depends on the medical evidence in the record. *See Hart v. Finch,*

---

[2] The ALJ held a hearing on March 1, 2017, followed by a supplemental hearing on November 1, 2017. (R. 39-83).

440 F.2d 1340, 1341 (5th Cir. 1971).  If the claimant's impairments are not severe, the analysis stops.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  Otherwise, the analysis continues to step three, at which the Commissioner determines whether the claimant's impairments meet the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairments fall within this category, the claimant will be found disabled without further consideration.  *Id.*  If the impairments do not fall within the listings, the Commissioner determines the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).

At step four the Commissioner determines whether the impairments prevent the claimant from returning to past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, he or she is not disabled, and the evaluation stops.  *Id.*  If the claimant cannot perform past relevant work, the analysis proceeds to the fifth step, at which the Commissioner considers the claimant's RFC, as well as the claimant's age, education, and past work experience, to determine whether he or she can perform other work.  *Id.*; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can do other work, he or she is not disabled.  *Id.*

Applying the sequential evaluation process, the ALJ found Plaintiff had not engaged in SGA since her application date.  (R. 20).  At step two, the ALJ found

Plaintiff suffered from the following severe impairments: (1) obesity; (2) lumbar and cervical degenerative disease; and (3) generalized anxiety disorder. (*Id.*).

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments meeting or medically equaling any of the listed impairments. (R. 20-22). Before proceeding to step four, the ALJ determined Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(c), with the following restrictions: (1) occasionally stooping, crouching, and turning her head left or right; (2) never climbing, driving, or performing bilateral upper extremity pushing, pulling, or overhead reaching; (3) occasionally having contact with the general public; and (4) only working in temperature-controlled environments. (R. 22).

At step four, the ALJ determined Plaintiff could not perform her past relevant work but could perform other jobs, including routing clerk, marker, and small parts assembler. (R. 29-30). Accordingly, the ALJ concluded Plaintiff was not disabled. (R. 31). The Appeals Council denied Plaintiff's request for review. (R. 1). Plaintiff timely filed the instant appeal. (*See id.*; Doc. 1).

## II.    STANDARD OF REVIEW

A court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the

Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). A court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, a court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if a court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

No decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to

determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.   DISCUSSION

On appeal, Plaintiff contends the ALJ erred by: (1) improperly evaluating Plaintiff's credibility under the Eleventh Circuit's pain standard; and (2) failing to give proper weight to the opinions of Plaintiff's primary treating physician, Arden Aylor, MD. (Doc. 11 at 4, 11). Plaintiff's contentions focus on the ALJ's determinations regarding her neck and back pain. (*See* Doc. 11 at 4-5). These arguments are addressed in turn.

## A.   <u>Pain Standard</u>

Plaintiff contends the ALJ erred in rejecting her testimony regarding her pain and the resulting limitations.[3] The Eleventh Circuit has established a three-part pain standard to assess a claimant's subjective pain testimony:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the

---

[3] Plaintiff characterizes the ALJ's review of Plaintiff's testimony regarding pain as a negative credibility determination. (Doc. 11 at 4-10). However, the ALJ did not mention Plaintiff's credibility. Instead, the ALJ evaluated Plaintiff's subjective testimony regarding her symptoms in accordance with SSR 16-3p. *See* 20 C.F.R. § 404.1529.

alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).   An individual's statement as to pain is not conclusive evidence of disability; there must also be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, to support the statement.   42 USC § 423(d)(5)(A).   Thus, a claimant's subjective pain testimony supported by medical evidence supports a finding of disability.   *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995).   An ALJ must articulate explicit and adequate reasons for discrediting a claimant's subjective testimony regarding pain.   *Wilson*, 284 F.3d at 1225.   The determination of whether a medical condition can reasonably be expected to give rise to pain is a question of fact subject to the substantial evidence standard of review.   *See Lamb v. Bowen*, 847 F.2d 698, 702 (11th Cir. 1988).

Here, the ALJ noted Plaintiff's testimony on the following matters during the March 20, 2017 hearing.[4]   Plaintiff described pain in her neck, shoulders, and lower back which prevented her from standing for more than two hours at a time and made it difficult for her to sit for long periods of time.   Plaintiff further testified she sat in a recliner with her legs elevated and spent about six hours per day lying down—in thirty-minute increments—due to pain.   Plaintiff claimed she could not lift more than ten pounds and that her husband does most of the

---

[4] Plaintiff adopted the ALJ's recitation of her testimony as true and correct.  (Doc. 11 at 3).

7

household chores; she also claimed the pain and numbness caused her to fall twice each week.  Plaintiff testified she had surgery on her cervical spine to place a plate in her neck, which made it difficult to move her head.[5]  During a supplemental hearing on November 1, 2017, Plaintiff testified her symptoms—particularly pain and stiffness—had worsened to the point that she spent 90 percent of her day sitting in a recliner.  (R. 23).

The ALJ then summarized Plaintiff's treatment history, starting with her cervical spine fusion surgery in 2004, followed by a 2009 MRI which revealed degenerative changes and a small central disc protrusion at C4-5 but no evidence of nerve or cord compression.  (R. 24; *see* R. 487).  The ALJ noted a gap in treatment until August 15, 2013, when Victor E. Mendoza, MD, a neurologist and pain specialist, evaluated Plaintiff.  (R. 24; *see* R. 496-97).  Dr. Mendoza's physical exam revealed: (1) full range of motion in the cervical spine; (2) reduced range of motion in the lumbar spine; (3) a positive straight leg test on the right; (4) 5/5 strength in her upper extremities; (5) 4+/5 strength in her lower extremities; (6) intact sensation throughout; and (7) a mild, right-sided limp.  (R. 497).  On October 3, 2013, Dr. Mendoza performed a caudal epidural injection and right sacroiliac lidocaine joint injection ("Injection Treatments"), which resulted in moderate symptom improvement.  (R. 495, 498-99).  A June 25, 2014 MRI of

---

[5] Plaintiff underwent this surgery in 2004.  (*See* Doc. 11 at 8).

Plaintiff's lumbar spine ordered by Dr. Mendoza showed mild multilevel degenerative changes but no frank neural compromise. (R. 502-03). The ALJ noted Plaintiff did not seek additional Injection Treatments, despite the moderate relief they afforded. (R. 24).

The ALJ noted another gap in back treatment until January 30, 2015, when Plaintiff visited Dr. Aylor, her primary care physician. (R. 24; *see* R. 537). The ALJ then cited a treatment note from October 9, 2015, reflecting Plaintiff's complaints of chronic back and joint pain, but also reporting her denial of falls, gait abnormality, headache, numbness, or tingling. (R. 24-25; *see* R. 511-12). Physical examination was unremarkable, and Plaintiff did not claim new back or joint issues; her daily function and quality of life was stable. (R. 511-12). The ALJ next discussed a treatment note from September 11, 2015, when Dr. Aylor noted Plaintiff did not complain about side-effects or inefficacy of her prescriptions, including Xanax, a muscle-relaxer, and a narcotic pain medication. (R. 25; *see* R. 513). Dr. Aylor reported cervical spine crepitus and reduced range of motion in the lumbar spine with diffuse sensory loss in the lower extremities. (R. 513-14). The ALJ noted Plaintiff's denial of falls, headaches, tingling, or weakness, as well as Dr. Aylor's observation that she was not in acute distress. (R. 25; *see* R. 513-14). Plaintiff had pain with straight leg raising, but Dr. Aylor concluded she was negative for true radiculopathy. (R. 514). The ALJ next moved

9

to a December 4, 2014, treatment note reflecting Plaintiff's reports that her daily function and quality of life remained stable with no new back or joint issues. (R. 25; *see* R. 576). In addition to other treatment records, the ALJ discussed treatment notes from August 14, 2017, and October 9, 2017, in which Dr. Aylor remarked Plaintiff's pain had improved with medication and that she rated her pain as 5/10. (*See* R. 26, 592, 595).

The ALJ concluded none of Dr. Aylor's treatment records supported Plaintiff's claim that her pain was so severe as to force her to spend 90 percent of her days lying down or sitting in a recliner with her feet elevated. Additionally, the ALJ noted Dr. Aylor did not refer her to a neurologist or order additional imaging, instead prescribing conservative, routine treatment. (R. 26). Notably, Dr. Aylor had not prescribed any more aggressive treatment, and Plaintiff had not undergone any such treatment since her October 2013 Injection Treatments, which had provided moderate relief. (*Id.*). Additionally, the ALJ observed this more aggressive treatment occurred before Plaintiff's alleged disability onset date and before she quit working. (*Id.*)

On appeal, Plaintiff contends the ALJ's recitation of the medical record did not include her reports of back pain reflected in the treatment notes cited in the decision. (Doc. 11 at 6-9). Plaintiff points to her consistent repots of back, shoulder, and neck pain from 2015 through 2017, as well as Dr. Aylor's physical

examinations documenting limited range of motion in the lumbar spine and crepitus in the cervical spine. (*Id.*).

Plaintiff is correct that Dr. Aylor's records show she consistently complained of back pain from 2015 to 2017. However, the problem for Plaintiff is the lack of objective medical evidence to support the disabling effects of her reported pain. *See* SSR 16-3p; *Wilson*, 284 F.3d at 1225-26; *Foote*, 67 F.3d at 1561. The only imaging Plaintiff cites are MRIs taken prior to her alleged disability onset date. (Doc. 11 at 10) (*citing* R. 424, 502). These MRIs showed: (1) multilevel degenerative changes with annular tearing at L4-5 and L5-S1 but no disc herniation, canal stenosis, or foraminal compromise (R. 424); and (2) mild multilevel degenerative changes with no frank neural compromise (R. 502).

Additionally, the ALJ's conclusion that the objective medical evidence did not support the disabling limitations Plaintiff alleged is supported by substantial evidence. While Plaintiff testified at the November 2017 supplemental hearing that she spent 90 percent of her day in a recliner, Dr. Aylor had noted in August and October 2017 that her pain was moderate, she had no new back or joint issues, and her functioning and quality of life were "stable." (R. 26, 593). That Dr. Aylor had not deviated from conservative medication treatment did not support Plaintiff's claims regarding her limitations. *See* 20 C.F.R. § 404.1529(c)(3)(iv). Further, Plaintiff did not pursue additional Injection Treatments despite their moderate

11

successfulness in treating her pain in 2013.  Likewise, the ALJ noted treatment records showing Plaintiff's condition was stable under the conservative treatment regimen Dr. Aylor pursued.  (R. 26).

Next, while Plaintiff testified she began falling approximately twice per week starting in 2012, Dr. Aylor's treatment notes show Plaintiff denied falls without exception.  This inconsistency between Plaintiff's allegations and the medical record provides substantial evidence to support the ALJ's conclusion that her symptom of falling was not as severe as she claimed.   20 C.F.R. § 404.1529(c)(4).  The same is true regarding Plaintiff's testimony she suffered from weekly migraine headaches.  (R. 23, 72).  Specifically, Dr. Aylor's treatment notes from June 2015 through October 2017 reflect Plaintiff denied headaches on all but one visit.  While Plaintiff complained of headaches during her June 19, 2017 visit, she did not describe it as a migraine or as debilitating.  (R. 599).

Plaintiff contends that, rather than fairly analyzing her longitudinal treatment history, the ALJ relied on isolated notations in the record which supported a finding she was not disabled.  (Doc. 11 at 6-7).  Specifically, Plaintiff takes issue with the ALJ's citation of the treatment notes from January 31, 2015, and September 11, 2015, for the proposition that Plaintiff was not in distress and denied falls, gait abnormalities, headaches, numbness, and tingling.  (*Id*.).  A review of the record shows Dr. Aylor never concluded Plaintiff was in distress and,

save her June 19, 2017 complaint of headaches, always denied falls, gait abnormalities, headaches, numbness, and tingling when asked.  (R. 510-11, 513-14, 516, 519-20, 523-24, 526-27, 529-30, 532, 535, 537-38, 545, 548, 551, 554, 557, 561, 563, 566, 569, 572, 576, 589, 592, 596, 599, 602, 605).[6]  Plaintiff's argument on this point relies on her consistent, subjective complaints of pain, as reflected in Dr. Aylor's treatment notes.  (Doc. 11 at 7-10).  However, the undersigned has reviewed the record in this case and finds the ALJ's determination that the Plaintiff's symptoms were not as severe as alleged is supported by substantial evidence.  Moreover, the question here is not whether the ALJ could have reached a different conclusion regarding Plaintiff's disability; the relevant inquiry is whether the conclusion is supported by substantial evidence.  *See Dyer*, 395 F.3d at 1212 (ALJ need not refer to every piece of evidence in the record, so long as decision is supported by substantial evidence).  Here, substantial evidence—largely in the form of Dr. Aylor's treatment records—supports the ALJ's conclusions.

### 2.   <u>Weight Afforded Opinion Evidence</u>

Plaintiff contends the ALJ erred in his assessment of the opinions of Dr. Aylor.  (Doc. 11 at 10-12).  Absent a showing of good cause to the contrary, the

---

[6] Plaintiff contends her denials of falls or headaches is unpersuasive because they appear in Dr. Aylor's review of her neurological symptoms.  (Doc. 11 at 6-7).  However, Plaintiff has not pointed to any additional treatment records reflecting Plaintiff complained about these symptoms—symptoms she testified she suffered from on a regular and frequent basis.

opinion of a claimant's treating physician is entitled to substantial or considerable weight. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Failure to articulate the reasons for giving less weight to the opinion of a treating physician is reversible error. *Id.* Good cause exists where a treating physician's opinion is: (1) not supported by the evidence; (2) contradicted by the evidence; or (3) conclusory or inconsistent with the doctor's own medical records. *Phillips*, 357 F.3d at 1240-41. While the ALJ can "reject the opinion of any physician when the evidence supports a contrary conclusion . . . the ALJ is required [] to state with particularity the weight he gives to different medical opinions and the reasons why." *McCloud v. Barnhart*, 166 F. App'x 410, 418-19 (11th Cir. 2006) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). Furthermore, the ALJ must explain why an opinion is inconsistent with the medical record; he or she cannot simply make a conclusory pronouncement that the opinion is inconsistent with evidence of record. *See Bell v. Colvin*, No. 15-0743-GMB, 2016 WL 6609187 at *4 (M.D. Ala. Nov. 7, 2016).

Dr. Aylor's opinions appear in two physician statements he completed on October 12, 2016, and August 11, 2017. (R. 541-42, 608-09). In the October 12, 2016 statement, Dr. Aylor noted Plaintiff suffered from joint disease, anxiety, cervical disc displacement, lumbar degeneration, chronic pain, and fibromyalgia. (R. 541). Dr. Aylor opined Plaintiff suffered from severe pain in her cervical and

lumbar spine and experienced constant, severe pain, as well as anxiety attacks.  (R. 541-42).  Dr. Aylor further opined Plaintiff could lift no more than five pounds, could not stand on concrete floors, and suffered from marked limitations in social functioning and the ability to cope with stress due to anxiety; he did not expect Plaintiff's condition to improve in the future and noted she would be unable to perform her job duties.  (R. 542).  In the August 11, 2017 statement, Dr. Aylor noted Plaintiff's chronic degenerative disc disease, disk herniation, and spinal stenosis and stated she suffered from constant, severe pain.  (R. 608).  Dr. Aylor opined Plaintiff could not do heavy lifting and could not stand or sit for any length of time.  (R. 609).[7]

Regarding Dr. Aylor's October 12, 2016 opinion, the ALJ gave it no weight, concluding it was inconsistent with his treatment record and the record as a whole. (R. 27).  Regarding the limitations Dr. Aylor imposed due to Plaintiff's anxiety, the ALJ noted the only psychiatric treatment she received was via Dr. Aylor's prescription for Xanax; the ALJ also noted Plaintiff declined a referral for psychiatric care.  (R. 26).  The ALJ also noted that, while the October 12, 2016 opinion was based in part on fibromyalgia, Dr. Aylor had never diagnosed

---

[7] While Dr. Aylor's August 11, 2017 statement references X-rays taken on January 30, 2015, and February 2, 2015, the interpretation of those X-rays does not require a finding of disability.  (R. 608).  The January 30, 3015 X-ray of Plaintiff's lumbar spine showed disc narrowing at L1-L2 and anterior spurring throughout the lower spine, but Dr. Aylor described the condition as "mild" degenerative disc disease.  (R. 538).  Similarly, Dr. Aylor succinctly interpreted the February 2, 2015 X-ray of Plaintiff's cervical spine as showing disc narrowing at C5-6.  (R. 533).

Plaintiff with fibromyalgia or performed objective testing to detect the condition. (R. 27; *see* R. 541-42).  These inconsistencies, which the ALJ specifically noted, provide good cause to discount the October 12, 2016 opinion.  *Phillips*, 357 F.3d at 1240-41.

Regarding Dr. Aylor's August 11, 2017 opinion, the ALJ afforded it less than great or controlling weight due to its inconsistency with his treatment records. (R. 26).  The ALJ found the conclusion that Plaintiff suffered from constant, severe pain was based primarily on her subjective complaints but was contradicted by Dr. Aylor's clinical finding that she did not suffer from true radiculopathy.  (R. 26). The ALJ also found the limitations Dr. Aylor imposed on Plaintiff's ability to lift, sit, and stand were not supported by his conservative treatment of her back pain, especially in light of Plaintiff's failure to pursue further Injection Treatments.  (R. 26).   Finally, the ALJ found Dr. Aylor's prohibition on sitting was flatly contradicted by Plaintiff's testimony that she spent approximately 90% of her days sitting in a recliner.  (R. 26).  These inconsistencies, which the ALJ specifically noted, provide good cause to discount the August 11, 2017 opinion.  *Phillips*, 357 F.3d at 1240-41.

Because the ALJ offered specific examples of inconsistencies between Dr. Aylor's opinions and his own treatment records, the decision to afford less than

controlling weight to his opinions was supported by good cause.  Accordingly, the ALJ did not err regarding Dr. Aylor's opinions.

## IV.   CONCLUSION

Upon review of the administrative record and considering all of Plaintiff's arguments, the undersigned finds the Commissioner's decision is supported by substantial evidence and is in accord with applicable law.  Accordingly, the Commissioner's decision is due to be affirmed.  A separate order will be entered.

**DONE** this 8th day of May, 2020.

STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE